[Sac. No. 1934. Department One.—July 13, 1912.]

EDWARD C. GOLDNER, Appellant, v. WILLIAM CRANE SPENCER et al., Defendants; THOMAS E. CURRAN, Administrator of the Estate of Elizabeth Cullen, Deceased, Respondent.

APPEAL—WRITTEN OPINIONS OF TRIAL JUDGE EMBODIED IN RECORD—SUPPORT OF FINDINGS.—Written opinions of the trial judge, notwithstanding these are embodied in the bill of exceptions used on appeal, cannot be considered in determining whether or not the findings are sufficiently supported by the evidence.

MORTGAGE—FRAUD ON CREDITORS OF MORTGAGOR—EVIDENCE—FINDINGS NOT SUPPORTED.—In an action to foreclose a mortgage, in which the defense was interposed by a judgment creditor of the mortgagor that the mortgage and the note secured thereby were without consideration, and were executed by the mortgagor with the intent to hinder, delay, and defraud his creditors, and were accepted by the mortgagee with knowledge of such facts and with the intent to assist the mortgagor in such fraudulent purpose, it is held, upon a review of the evidence, that the findings sustaining such defense are not supported by the evidence.

ID.—MORTGAGE GIVEN FOR VALUABLE CONSIDERATION—BURDEN OF PROOF —MORTGAGEE'S KNOWLEDGE OF FRAUDULENT INTENT OF MORTGAGOR. In such action, if a valuable consideration for the note and mortgage were shown, the burden of showing the mortgagee's knowledge of a fraudulent intent on the part of the mortgagor was on the judgment creditor.

ID.—CONSIDERATION FOR MORTGAGE—LOAN TO MORTGAGOR—FAILURE TO ARRANGE FOR RATE OF INTEREST AT TIME OF LOAN—EXECUTION OF MORTGAGE SPECIFYING RATE—INFERENCE OF FRAUDULENT INTENT.— Where a loan of money to the mortgagor was the consideration for

such note and mortgage, and nothing was arranged at the time of the loan as to the rate of interest it should bear, the fact that the note and mortgage subsequently accepted called for interest at the rate of eight per cent per annum compounding quarterly, did not warrant any inference of a fraudulent intent on the part of the mortgagee with relation to the other creditors of the mortgagor.

Id.—Acceptance of Evidence of Indebtedness in Excess of Amount Due—Evidence Tending to Show Fraud.—The acceptance by a creditor from a debtor known to be financially involved of an evidence of indebtedness calling for more than is due, either in principal or interest, is not conclusive evidence of fraud. At most such a fact may be evidence tending to show fraud, which is purely a question of fact and not of law, except as otherwise provided in sections 3440 and 3442 of the Civil Code. Its importance as a circumstance tending to show fraud is necessarily dependent upon the facts of the particular case.

APPEAL from a judgment of the Superior Court of Placer County and from an order refusing a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

L. W. Lovey, P. L. Benjamin, and Meredith & Landis, for Appellant.

Henry N. Beatty, Francis Dunn, and Thos. E. Curran, for Respondent.

ANGELLOTTI, J.—This is an action to foreclose a mortgage on lands in Placer County alleged to have been given by defendant Spencer to plaintiff to secure the payment of a note for twenty-one thousand dollars dated November 15, 1907, payable one year after date, alleged to have been given by said Spencer to plaintiff. Defendant Curran, administrator, etc., was made a party defendant because he had an interest in the mortgaged premises, which interest was alleged to be subject to plaintiff's mortgage. Defendant Spencer filed an answer admitting all the allegations of the complaint except the allegation as to the amount due, alleging that five hundred dollars had been paid on February 19, 1909, on account of the interest that had accrued on the note. This allegation was admitted by plaintiff's attorneys on the trial to be true. Defendant Curran, administrator,

filed an answer denying all the allegations of the complaint
as to the note and mortgage, and the allegation that such
mortgage was superior to his lien. He alleged his lien on
the mortgaged premises to be that of a judgment obtained ·
by him in the superior court of the city and county of San
Francisco against said Spencer on March 27, 1908, for $10,-
946.46 and costs, a certified transcript of which judgment
was recorded in the office of the county recorder of Placer
County on April 6, 1908. By his amended answer served
and filed at the commencement of the trial, he further al-
leged that said note and mortgage were executed and delivered
without consideration, at a time when Spencer was heavily
indebted to him and numerous other creditors, and insolvent,
and when he had no other property except the property de-
scribed in the mortgage out of which he, Curran, and such
other creditors could satisfy their claims against him; that
such note and mortgage were executed and delivered for the
purpose of defrauding, delaying, and hindering him, Cur-
ran, as a creditor of Spencer, and other creditors; that plain-
tiff well knew that they were executed and delivered for that
purpose, and that at no time since their execution has Spencer
ever had any other property out of which Curran and other
creditors of Spencer can satisfy their claims. By supple-
mental answer he alleged the sale to himself on January 11,
1910, on an execution issued on said judgment, of said prop-
erty, for the sum of ten thousand dollars.

The trial court found that the note and mortgage were exe-
cuted as alleged in the complaint, that at the time of their
execution, Curran, as such administrator, was a creditor of
Spencer on the claim subsequently reduced to judgment; that
at such time Spencer was insolvent; that such note and mort-
gage were without consideration; that said note and mortgage
were made, executed, and delivered by Spencer to plaintiff,
with intent to hinder, delay, and defraud his creditors; that
plaintiff accepted the same knowing these facts and knowing
that Curran was one of said creditors, and with the intent
to assist Spencer in his purpose to hinder, delay, and defraud
his creditors. Judgment was given, declaring the amount due
to plaintiff on his note,—namely, $24,388.10, and directing
a sale of such portion of the mortgaged premises as had not
been released to pay said amount, with interest and costs,

subject, however, to the claim and lien of Curran, which was adjudged to be prior to plaintiff's claim.

Plaintiff's motion for a new trial was denied. This is an appeal by him from the judgment and from the order denying his motion for a new trial.

The validity of Curran's claim against the mortgaged premises is not questioned, the only question in regard thereto being whether it is superior to or subject to plaintiff's mortgage. The mortgage was recorded in Placer County on March 18, 1908, while Curran's certified copy of the transcript of his judgment was not recorded in such county until April 6, 1908. The conclusion of the trial court was that the note and mortgage were void as against Curran because of the matters stated in the findings to the effect that the same were given by Spencer and accepted by plaintiff without consideration and for the purpose of hindering, delaying, and defrauding Curran and other creditors of Spencer. The principal claim on this appeal is that such findings were utterly without support in the evidence.

It is earnestly urged by plaintiff that it is apparent from written opinions filed by the trial judge on April 29, 1910, and May 19, 1910, which have been incorporated in the bill of exceptions, that he was satisfied by the evidence that plaintiff actually loaned Spencer twenty-one thousand dollars, and took the note and mortgage therefor, and that he did not in any way collude with Spencer to defraud any creditor, and that the only reason for holding the mortgage void as against Curran was that he accepted a note and mortgage calling for a higher rate of interest than that to which he was entitled, knowing that Spencer was heavily indebted to Curran and others. But, as has often been said, we cannot consider these written opinions in determining whether or not the findings are sufficiently supported by the evidence. Although in fact in the bill of exceptions, they constitute no proper part of the record for any such purpose. The findings of fact filed October 20, 1910, must be taken as embodying the conclusions of the trial court on all questions of fact submitted to it for decision. The only question for us is whether these findings have sufficient legal support in the evidence and such inferences as may reasonably be drawn therefrom. Learned counsel for Curran frankly ad-

mit in their brief that "there is practically no conflict in the evidence, i. e., there is no point on which the testimony of one witness was directly contradicted by the testimony of any other witness" and that "the problem of deciding the case reduces itself into drawing the proper conclusions from the facts shown."

Addressing ourselves first to the question of want of consideration for the note. Plaintiff and Spencer are half-brothers. Plaintiff during, and ever since the year 1907, resided in Paris, France. In April, 1907, Spencer went from San Francisco, his place of residence, to Paris, and did not return to San Francisco until October. He was then heavily interested in the California City Rock Company, a rock quarrying enterprise, and was anxious to obtain money with which to further develop this enterprise, in which he apparently had great confidence. While in Paris he obtained amounts of money aggregating nearly thirty thousand dollars. His bank-book containing his account with the bank "Societe General" showed deposits from June 11th to October 18th, 1907, aggregating 146,500.65 francs, the last being one of ninety-four thousand francs on October 18, 1907. He testified that he received not exceeding fifty thousand francs from his stepfather's estate, and acknowledged that forty-five thousand francs of the amount so deposited was so received by him. When he returned to San Francisco he brought at least two drafts for eight thousand dollars each issued by said bank on October 22, 1907, one of which was deposited in the Crocker National Bank on November 15, 1907, and cashed by the Wells Fargo National Bank on November 16, 1907, and the other of which was paid by the latter bank on January 9, 1908. As to the source from which the money procured in Paris was obtained, he testified positively that amounts aggregating twenty-one thousand dollars were borrowed from plaintiff in Paris, the last item so borrowed being that of ninety-four thousand francs on October 18, 1907, on his promise to send plaintiff a note and mortgage for the whole twenty-one thousand dollars on his return to San Francisco. Robinson, Spencer's attorney, who was with him in Paris, testified that he heard Spencer say to plaintiff that he desired to borrow some money from him and that plaintiff replied the he "would loan him

some money.'' Spencer testified that his reason for not giving the mortgage while in Paris was that he did not have a description of the real property to be mortgaged at hand. On his return to San Francisco he prepared and signed the note and mortgage and acknowledged the execution of the mortgage on November 19, 1907, before a notary public, and he testified that he sent the same by mail to plaintiff at Paris, with the suggestion that if satisfactory the mortgage be returned to him to be recorded. It was subsequently recorded at Spencer's request in Placer County. He testified that plaintiff did return it to be recorded, and that after recordation he sent it back to plaintiff at Paris. Plaintiff's attorney, Mr. Lovey, testified that in August, 1909, he received both the note and mortgage from plaintiff by mail from Paris with a letter from plaintiff stating that no part of the principal or interest had been paid and directing him to press for collection, and if necessary to begin a suit to foreclose the mortgage and buy in the lands if necessary. This letter was introduced in evidence. The action was commenced September 10, 1909. In reply to a letter of inquiry from Mr. Lovey to plaintiff for definite information as to the circumstances of the loan, written in October, 1907, plaintiff wrote to Mr. Lovey, regretting that no satisfactory settlement had been possible and regretting the consequent necessity of the expense of a foreclosure suit, and informing him that the money was given to Spencer by his ''personal check on my bank with the exception of 3,500 francs which he owed me at the time,'' and giving the items and dates, which corresponded with the last five items in Spencer's French bankbook, the last item being that of ninety-four thousand francs on October 18, 1907. Spencer produced in evidence a receipt from himself to plaintiff which was as follows:

''PARIS LE 18 Octobre, '07.

''Received from Edward C. Goldner Ninety-four Thousand francs, being part of the $21,000 Note and Mortgage to be executed by me on my return to San Francisco.

''WM. CRANE SPENCER.''

Spencer testified that he gave this receipt to plaintiff on October 18, 1907, when the ninety-four thousand francs were loaned to him, and that plaintiff returned it to him with the

mortgage when he sent the latter to be recorded. When introduced in evidence it bore the indorsement "Paid by note Nov. 15-07. Ed. C. Goldner." The genuineness of the signature of plaintiff to this was apparently not questioned, and Spencer testified that he received it from plaintiff so indorsed. Mr. Robinson, Spencer's attorney, testified that in January, 1909, plaintiff, who was in California from about October, 1908, to April, 1909, told him that he had a note and mortgage against Spencer and could not collect his money, and asked him what he could do, and that he, Robinson, told him that he could not act for him because he was Spencer's attorney, and recommended to him three or four San Francisco attorneys, including Mr. Lovey.

No witness testified directly to anything in conflict with the foregoing. Opposed to it are only certain circumstances which respondent claims warranted an inference on the part of the trial court to the effect that there was no consideration for the note and mortgage. In considering these it must be borne in mind that, by reason of certain facts that cannot be disputed, if in fact there was no consideration, plaintiff must have deliberately assisted in the fabrication of evidence for the purpose of consummating a fraud on Spencer's creditors. That plaintiff accepted the note and mortgage from Spencer, that he indorsed Spencer's receipt of October 18, 1907, to him for ninety-four thousand francs, "Paid by note, Nov. 15-07. Ed. C. Goldner," that he furnished to his attorney a written statement to the effect that he had loaned to Spencer the various sums stated therein, on the dates named, aggregating one hundred and five thousand francs, and that he directed the institution by his attorney of the foreclosure action, is absolutely established. These things cannot be reconciled with the idea of want of consideration except upon the theory that he was actively engaged in a deliberate attempt to defraud. They fully corroborated Spencer in his testimony as to the borrowing of twenty-one thousand dollars from plaintiff, the agreement as to the giving of the note and mortgage therefor, and the claim that such note and mortgage were given in pursuance of such agreement.

The matters relied upon by respondent as warranting a conclusion on this point opposed to plaintiff's claim and to Spencer's direct testimony are all as consistent with honesty

on the part of plaintiff as with fraud. Spencer was in need of money. The Curran suit was pending, having been commenced in April, 1907, but no answer was filed therein until February 5, 1908. Outside of his interest in the quarry company, Spencer had nothing except his Placer County land and some ten thousand dollars that he had just received from his stepfather's estate. These things were probably all known to plaintiff. Plaintiff advanced the money on Spencer's mere request without any security being given, leaving it to Spencer to send him a note and mortgage on his return to America, and without taking any step to ascertain the condition of the title of the property proposed to be mortgaged. He may have known that the property was not worth to exceed sixteen thousand dollars. He subsequently trusted Spencer to record the mortgage. He subsequently, at the request of Spencer, executed two partial releases covering small portions of the mortgaged property, without receiving any consideration therefor. He never appeared as a witness in this proceeding.

Of course, some of these facts are not reconcilable with the idea that plaintiff in his dealings with Spencer was a cold and keen business man, careful to guard himself against loss. But it is to be borne in mind that he was a half-brother of Spencer, that the relations between plaintiff and Spencer had always been most friendly, and that Spencer had the greatest confidence in his rock quarry enterprise, and fully believed that he would make a great deal of money out of it, and had probably imbued plaintiff with the same confidence. Plaintiff was not dealing with a stranger, but with his half-brother, whom he desired to aid financially and in whom he had every confidence. It would not be at all surprising under the circumstances, assuming that he was financially well situated, which does not appear to be questioned, had he been willing to advance the money without any security whatever, and it certainly is not a very material circumstance, in view of the relations between the parties, that he was willing to trust Spencer to subsequently furnish him with such security as he had promised to give, and to see that the instrument furnishing such security was properly recorded. The same is true as to the fact that he was willing to take inadequate security for his loan and also as to the fact that he was

willing to execute the partial releases without consideration. All these things are entirely consistent, under the circumstances shown, with perfect honesty and good faith on his part. We are unable to see any sufficient foundation for a conclusion that this action was brought as the result of any collusion between plaintiff and Spencer. His failure to personally appear during the trial is not of any particular importance in view of the facts shown by the record.

We have given these matters very careful consideration, and are unable to find anything therein that warrants the rejection of the clear and uncontradicted evidence as to the actual making of the loan of twenty-one thousand dollars by plaintiff to Spencer upon the promise by Spencer that he would give therefor the note and mortgage in suit here. Even if, as claimed by learned counsel for Curran, the situation was such as to throw the burden on plaintiff to show a valuable consideration for the note and mortgage, the evidence was·such, in our opinion, as to compel a conclusion that these were the facts. The circumstances claimed to be opposed to this conclusion cannot be held to constitute such "satisfactory" evidence as justifies a verdict. They are at best "slight evidence." (Code Civ. Proc., sec. 1835.)

What we have said applies with equal force to the matter of good faith on the part of plaintiff in· the acceptance of the note and mortgage. There was nothing in the nature of evidence sufficient to support a conclusion that plaintiff had knowledge of any intent on the part of Spencer in giving the mortgage to thereby destroy, hinder, or defraud any other creditor, if indeed such intent did exist on the part of Spencer. If a valuable consideration for the note and mortgage was shown, the burden of showing plaintiff's knowledge of a fraudulent intent on the part of Spencer was on Curran (see *Hart* v. *Church*, 126 Cal. 481, [77 Am. St. Rep. 195, 58 Pac. 910, 59 Pac. 296] ; *Roberts* v. *Burr*, 135 Cal. 159, 67 Pac. 46] ). It may be freely conceded that if there was satisfactory evidence to show that it was understood between the parties that the loan was in fact to be one without security, and that the mortgage was a mere device to protect the property from other claims for the sole benefit of Spencer, and was not to be enforced against him in any event, a different conclusion could be sustained. But certainly there is not satisfactory

evidence of any such understanding. Looking at the evidence in the light most favorable to Curran, we have at most in the circumstances we have above detailed, some slight evidence affording ground for vague surmise and suspicion as to the motives of the parties, in no degree measuring up to the standard provided by law for what is termed "satisfactory evidence."

Something has been said about the matter of interest. The note called for interest at the rate of eight per cent per annum, "Compounding quarterly." In the mortgage it was declared that the same was given as security for the payment of twenty-one thousand dollars on November 15, 1908, "with interest thereon at the rate of eight per cent per annum according to the terms and conditions of a certain promissory note of even date with the mortgage, in words and figures following, to wit"; but the note was not set forth in the mortgage. So far as the record shows, nothing was said at the time of the loan as to the rate of interest, but it does not appear from the record that any point was made in regard to interest either in the pleadings or at the trial, except in so far as a waiver of interest in excess of seven per cent, and the written opinions filed by the trial judge, indicate that something was said about the matter in argument. At the time of the first submission of the case, April 7, 1910, plaintiff's attorneys filed a disclaimer and waiver of all interest "in excess of seven per cent (7%) per annum upon said note from the date of the execution thereof." The learned trial judge apparently was of the opinion that there was no agreement as to the amount of interest and that consequently plaintiff was entitled to only seven per cent per annum, and furthermore that by reason of certain early decisions of this court (*Taaffe* v. *Josephson,* 7 Cal. 352; *Mc-Kenty* v. *Gladwin, Hugg & Co.,* 10 Cal. 227) if plaintiff with full knowledge that Spencer was largely indebted, knowingly and intentionally took a note calling for a larger rate of interest than he had agreed to accept or to which he was entitled the note and mortgage must be held void *in toto.* It is conceded by learned counsel for Curran that in so far as the cases cited may be considered as holding that the acceptance by a creditor from a debtor known to be financially involved of an evidence of indebtedness calling for more

than is due, either in principal or interest, is conclusive evidence of fraud, they have been overruled. At most such a fact may be evidence tending to show fraud, which is purely a question "of fact and not of law," except as otherwise provided in sections 3440 and 3442 of the Civil Code. Its importance as a circumstance tending to show fraud is necessarily dependent upon the facts of the particular case. In the case at bar there is not the slightest basis in the facts we have set forth in regard to the matter of interest for a conclusion that there was any fraudulent intent on the part of anybody and especially on the part of plaintiff. Assuming that nothing was said as to the rate of interest when the money was advanced, which is the most that is claimed by respondent, that matter was simply left to be provided for in the note and mortgage which Spencer agreed to give plaintiff on his return to San Francisco. Plaintiff had the right to assume that the note would provide for interest at a reasonable rate. It cannot be claimed that there was anything unreasonable about the rate of interest prescribed, especially in view of the law as it then was relative to the payment of taxes by the mortgagee. We are utterly at a loss to see how the acceptance by plaintiff of the note and mortgage containing the provision in regard to interest to which we have referred, where nothing had theretofore been agreed upon in regard to the rate, could warrant any inference of a fraudulent intent on his part with relation to the other creditors of Spencer.

From what we have said it is apparent that our conclusion is that certain findings essential to support the judgment subordinating plaintiff's lien to the lien of Curran's judgment are without sufficient support in the evidence, and it is unnecessary to discuss other points made in the briefs.

The judgment and order denying a new trial are reversed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.