[Civ. No. 19350.   First Dist., Div. One.   July 19, 1961.]

WILLIAM R. SCHIRMER, as Administrator with the Will Annexed, etc., Respondent, v. RUTH E. LYBACK, as Administratrix, etc., Appellant.

Ruffo & Chadwick for Appellant.

Healy and Robinson for Respondent.

HOYT, J. pro tem.*—On November 21, 1958, the above-entitled action was filed for the wrongful deaths of William E. Schirmer and Helen F. Schirmer against Ruth E. Lyback, as administratrix of the estate of Robert Clyde Henderson,

*Assigned by Chairman of Judicial Council.

deceased. An answer was filed on March 5, 1959, and at the same time a cross-complaint was filed for the wrongful death of Robert Clyde Henderson. After an answer to the cross-complaint had been filed, the plaintiff and cross-defendant filed a motion for summary judgment on the cross-complaint under section 437c of the Code of Civil Procedure.

The ground of said motion was that the cross-complaint is barred by the provisions of article I, chapter 12, of division 3 of the Probate Code, and particularly sections 700, 707, 714 and 716 thereof, in that no claim for the damages sought to be recovered by said cross-complaint was filed or presented within the time limited in said article I. The motion was supported by a declaration under penalty of perjury and by an affidavit and is opposed by an affidavit each of which show "affirmatively that the affiant, if sworn as a witness, can testify competently thereto." (Code Civ. Proc., § 437c.) This declaration and these affidavits are the joint declaration of William R. Schirmer, and James C. Walsh, Jr., dated October 8, 1959, the affidavit of John J. Healy dated October 15, 1959, and the affidavit of Robert S. Chadwick dated November 19, 1959.

The affidavits of John J. Healy and James C. Walsh, Jr., sworn to on November 25, 1959, do not state "affirmatively that the affiant, if sworn as a witness, can testify competently thereto." However, the few things in them which are material are covered by other properly executed affidavits to the same effect. The affidavit of John J. Healy sworn to on November 29, 1959, likewise does not state "affirmatively that the affiant, if sworn as a witness, can testify competently thereto," but it merely presents properly authenticated copies of the decrees of distribution in the Schirmer estates and properly authenticated portions of the probate register relating to these estates. Since these copies proved themselves and can be introduced in evidence without an affidavit they are properly before the court.

On the basis of the affidavits, the trial court ordered that the cross-complaint be dismissed and that the cross-defendant, William R. Schirmer, Administrator, etc., have judgment on the cross-complaint against said cross-complainant, Ruth E. Lyback, administratrix of the estate of Robert Clyde Henderson, deceased. From this judgment cross-complainant appeals.

It appears that on the evening of November 29, 1957, there was a collision between two automobiles, a Cadillac and a Ford. In the Cadillac were William E. Schirmer and his wife

Helen F. Schirmer. The Ford was driven by Robert Clyde Henderson, a Stanford University student. All three persons died on the date of the accident. Probate was started promptly in the Schirmer estates and the first publication of notice to creditors occurred on January 3, 1958, in both estates.

From the affidavits in support and opposition to the motion for summary judgment which were properly before the trial court, we learn that on November 12, 1958, creditors' claims were presented for the wrongful deaths of the Schirmers, for the destruction of their Cadillac, and for their funeral expenses. These claims were presented to Ruth E. Lyback, as administratrix of the estate of Robert Clyde Henderson. Each of said claims was rejected and on November 21, 1958, the complaint on said claims was filed in this case.

On March 5, 1959, the cross-complaint of Ruth E. Lyback, as administratrix, was filed for the wrongful death of Robert Clyde Henderson, for the destruction of his Ford automobile and for his funeral expenses. Among other things the affidavit of John J. Healy dated October 15, 1959, alleges ''. . . that no claim for damages against either of said [Schirmer] estates as a result of the accident or collision mentioned in said cross-complaint or the death of said Robert Clyde Henderson was filed in either of said estates . . . by said Ruth E. Lyback, Administratrix of the Estate of Robert Clyde Henderson, deceased, or any other person for or on her behalf, or otherwise, or at all, within six months from the date of the first publication of Notice to Creditors in each of said Schirmer estates . . . or on or before the rendition of a Decree of Distribution in each or either of said Schirmer estates, such Decree of Distribution having been rendered on October 23, 1958 . . .'' The joint declaration of William R. Schirmer and James C. Walsh, Jr., is in part as follows: ''. . . that at no time prior to March 5, 1959 was any claim filed in either of said [Schirmer] estate proceedings for any damages for the alleged wrongful death of said Robert Clyde Henderson, deceased, or for the funeral and burial expenses for said Robert Clyde Henderson, deceased, or for the loss of a Ford Sedan automobile owned by said Robert Clyde Henderson, deceased . . . .''

In opposition, the affidavit of Robert S. Chadwick states: ''That Robert Clyde Henderson at the time of his death [November 29, 1957] was a resident of the State of Washington, and a student at Stanford University. That the only heirs at law of Robert Clyde Henderson are his parents Clyde

H. Henderson, father, and Mildred Henderson, mother, and said parents of deceased Robert Clyde Henderson are residents of and residing in the City of Tacoma, State of Washington, and are not and have never been residents of the State of California. That said Clyde H. Henderson and Mildred Henderson did not, and have not, at any time received notice of the publication of notice to creditors in the estates of William E. Schirmer and Helen F. Schirmer, said estates being probated in the County of Alameda, State of California; that said estates of William E. Schirmer and Helen F. Schirmer have not and were not finally distributed until a time after March 5, 1959, at which time creditors' claims were . . . filed in the estates of William E. Schirmer and Helen F. Schirmer covering the wrongful death of Robert Clyde Henderson. And in fact, as recently as October 9, 1959 . . . the Probate Court in Alameda County did make an order in the estates of William E. Schirmer and Helen F. Schirmer, withholding money from distribution in said estates.''

Appellant urges that if Henderson died after the Schirmers his claim would not be a claim against their estates, and therefore no claim would have to be filed, citing *Sperry* v. *Tammany*, 106 Cal.App.2d 694 [235 P.2d 847]. In this case a husband made payments on an F.H.A. loan on separate property owned by his deceased wife. He had joined in the execution of the incumbrance to secure the balance of the purchase price. The court said: ''Since the indebtedness was not incurred by decedent in her lifetime it was a matter to be adjusted between defendant and the executor of her estate and the filing of a claim was not required. When a liability arises after the death of the decedent it does not constitute a claim against the estate which is required to be presented for allowance (except funeral expenses and other matters expressly provided in the Probate Code). (*Miller & Lux, Inc.* v. *Katz*, 10 Cal.App. 576, 578 [102 P. 946].)'' (P. 698.) This case was referred to in *Anderson* v. *McNally*, 150 Cal. App.2d 778 [310 P.2d 975], but not followed, the court in the Anderson case saying that there was no allegation in the complaint as to whether McNally or Anderson died first. We have the same situation in the instant case. Apparently no one knows who died first or last. Furthermore, in this case section 707 of the Probate Code particularly requires that a claim for wrongful death be filed within the time therein specified.

812

In *House* v. *Lala,* 180 Cal.App.2d 412, 415-416 [4 Cal.Rptr. 366], the court discusses the requirements necessary to the granting of a motion for summary judgment and states: ". . . the supporting affidavit or affidavits 'must contain facts sufficient to entitle plaintiff . . . to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto.' " (P. 415.) "In order to prevail, the plaintiff's affidavits must state facts establishing every element necessary to sustain a judgment in his favor. [Citing cases.] To satisfy the statutory requirement of 'particularity,' the movant's affidavits must state all the requisite evidentiary facts and not merely the ultimate facts. [Citing cases.] Moreover, neither conclusions of law nor conclusions of fact are sufficient to satisfy the statutory requirement. [Citing case.] Affidavits filed on behalf of the moving parties are to be strictly construed and those of his adversary are to be liberally construed." (P. 416.)

Probate Code, section 707, provides in part as follows: "All claims arising upon contract . . . and all claims for funeral expenses and all claims for damages for physical injuries or death or injury to property . . . must be filed or presented within the time limited in the notice [Notice to Creditors] . . .; and any claim not so filed or presented is barred forever, unless it is made to appear by the affidavit of the claimant to the satisfaction of the court or a judge thereof that the claimant had not received notice, by reason of being out of the State, in which event it may be filed or presented at any time before a decree of distribution . . . ."

Appellant's affidavit states that the Schirmer estates "have not and were not finally distributed until a time after March 5, 1959, at which time creditor's claims were . . . filed" in both estates covering the wrongful death of Robert Clyde Henderson. However, this is not the best evidence. The best evidence of a court order is the original or a properly authenticated copy of the same. Certified copies of the decrees of distribution were before the court and show that each estate was distributed on October 23, 1958. Each decree distributes an undivided one-third of the estate, including after-discovered property, to each of the three children of the Schirmers. In each decree of distribution the administrator was permitted to retain funds ($10,000 in Mr. Schirmer's estate and $5,000

in Mrs. Schirmer's estate) "to be used only to pay any further or additional taxes which may be deemed due, and which said sum or the balance thereof, he is hereby ordered and directed to distribute to the persons named as devisees and legatees in this Order and in the respective portions herein set out, after obtaining a release from further tax liability." This did not prevent the decree from being a final decree of distribution as of October 23, 1958, the date it was signed and filed. (*In re Canton Placer Mining Co.*, 190 Cal.App.2d 613, 616-617 [12 Cal.Rptr. 65].)

The last point made by appellant is that the time for filing claims against the estate was suspended for the filing of the cross-complaint as to matters arising out of the same transaction. In *Jones* v. *Mortimer*, 28 Cal.2d 627, 633 [170 P.2d 893], the court states: "There is an additional principle which prevents the statute of limitations from defeating defendants' setoff. The statute of limitations is not available to plaintiff as to defendants' counterclaim if the period has not run on it at the time of commencement of plaintiff's action even though it has run when the counterclaim is pleaded." (See also *Dillon* v. *Sumner*, 153 Cal.App. 2d 639, 645 [315 P.2d 84] ; and *Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 746 [47 P.2d 273].) In *Whittier* v. *Visscher*, 189 Cal. 450, 456 [209 P. 23], we find the following: "It is next contended that the claim in this case is barred by the statute of limitations. It is conceded that it was not so barred when the original action was begun, and the authorities in this state seem to be agreed that if the right of action relied on was alive at the commencement of the suit the statute does not run against it, when, as in this case, the full statutory period has expired thereafter during the pendency of the action and before the claim is pleaded as a cross-complaint."

The principle just cited is not limited to the general statutes of limitation. In *Luther* v. *Foster*, 150 Cal.App.2d 725 [310 P.2d 655], the appellant as administrator filed an action to quiet title against the respondent. The respondent filed a cross-complaint in *quantum meruit* for the reasonable value of her services to the decedent. She did not comply with the requirement contained in section 714 of the Probate Code that suit be commenced within three months after notice of the rejection of a claim against an estate. The appellant contended that the statute of limitations was not stayed by the filing of the original complaint. The court held however:

"The contention cannot be sustained for the reason that the filing of the complaint in this action suspended the running of the statute of limitations as to matters arising out of the transaction pleaded. [Citing cases.] In her cross-complaint, respondent alleged an agreement with deceased, under which, for the services she performed, he was to will her the property which is the subject matter of appellant's quiet title action. Although respondent was forced to rely on *quantum meruit* (because the alleged oral contract to compensate respondent by leaving her the entire estate upon his death is unenforceable—Civ. Code, § 1624; Code Civ. Proc., § 1973), the matter, nevertheless, was sufficiently related to the transaction or matter upon which the action was brought, to justify the filing of the cross-complaint. [Citations.]" (P. 729.)

From the foregoing cases we conclude that the filing of the original action tolled the running of the statute of limitations as to appellant's cross-complaint arising out of the same transaction provided the statute of limitations had not run when the original action was filed. The expiration of the statutory period occurred on October 23, 1958, when the decrees of distribution were rendered. The original action was filed on November 21, 1958; therefore, the statute had run

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.