[Civ. No. 6857. Third Dist. July 27, 1943.]

LES BLACKWELL et al., Appellants, v. EMIL A. FERRARI et al., Respondents.

Robert H. Schwab for Appellants.

J. M. Inman for Respondent.

THOMPSON, J.—This suit was instituted by plaintiffs seeking rescission of a written agreement for the purchase of certain real property. The complaint alleges that defendants falsely and fraudulently misrepresented material conditions in regard to the real property in question which induced the plaintiffs to enter into the agreement. An answer and a cross-complaint were filed, in which cross-complaint rescission of the contract to sell the real property was also asked.

The trial court announced its opinion that the rescission of the written agreement should be granted, upon the theory that defendants' pleadings constituted a consent to rescission. Upon motion of the defendants, the court vacated the submission and permitted them to withdraw their cross-complaint and to stand upon their answer. The matter was then resubmitted upon the issues raised by the complaint and the answer which denied the fraudulent misrepresentations charged in the complaint. Findings were adopted favorable to the defendants. Judgment was rendered accordingly, denying rescission.

The findings determine that defendants did not make any of the misrepresentations alleged in the complaint. The only issue for determination is the one of alleged fraud which was denied by the answer. In other words, is there substantial evidence to support the findings and judgment?

Lester T. Blackwell, one of the plaintiffs, testified that he became acquainted with Emil Ferrari, about March 1, 1940, and that he made arrangements through Mr. Nunneley, a real

estate man, for the three men to drive to Ferrari's ranch so that Blackwell might view the property. The ranch is located near Diamond Springs in El Dorado County. He also testified that he was the owner of a riding stable and about fifty-two head of horses; that Mr. Nunneley knew he was looking for a ranch that would pasture fifteen or sixteen mares a year and Nunneley told him that the Ferrari ranch would serve that purpose. Mr. Blackwell said that he told Nunneley and Ferrari he did not know anything about farming and would have to rely on their judgment as to whether the ranch would serve his purpose of pasturing and watering his horses; that he told Nunneley and Ferrari he was not interested in the ranch for dairying purposes but that Mr. Bette, a friend of his, was interested in a dairy ranch, and they might all get together on a deal; that Ferrari told him the meadow located on the ranch would take care of twenty to twenty-five head of dairy cows and the pasture would graze fifteen or sixteen head of horses; that Ferrari also stated he got two cuttings of hay a year, which was enough to feed the cows in the winter time; that there was ample water for all the stock Blackwell might wish to place on the ranch; and that Ferrari stated the springs on the ranch ''were never known to go dry.''

A week or two prior to May 6, 1940, on which date the agreement for the purchase of the ranch property was executed, Messrs. Blackwell, Nunneley, Ferrari, Maier and Mr. Maier's son met in Sacramento for the purpose of discussing the proposed purchase. Mr. Maier was interested in placing dairy cows on the ranch, and he and Blackwell subsequently entered into an agreement for the mutual benefit of one another which required that the ranch be cared for by Maier. In regard to this meeting in Sacramento, Mr. Blackwell testified that Maier thought the ranch was all right and that there was plenty of water and feed; that they (Blackwell and Maier) discussed the manner in which they would start the operation of the ranch, and that he (Blackwell) repeated to Ferrari that he did not know anything about farming or the dairy business and that he was relying on Ferrari's word in regard to the conditions existing on the ranch; that he told Maier he did not want him to quit his job unless he was sure he could make money on the ranch, and that all he wanted was a place for his horses with plenty of grass and water and somebody to take care of them; that Mr. Ferrari

assured them there was plenty of water on that ranch for the stock.

Mr. Blackwell took possession of the property soon after May 6, 1940, and Mr. Maier and his son promptly moved to the ranch to take over its care. Blackwell testified as to subsequent events and conditions: That the barn and the house on the ranch were in poor condition; that the barn required a new roof; that the pasture required fencing; that it was necessary to install watering troughs for both the pasture and the meadow; that the spring had been cleaned out, ditched and rocked but that the water failed to come down in sufficient quantity to fill the trough.

George Maier, who was called on behalf of plaintiffs, testified, in substance, that Ferrari told him there was plenty of water on the property and sufficient feed on the ranch for the stock; that he could mow the meadow twice a year; that it would support fifteen or sixteen head of cattle; that the pasture would support ten to fifteen head of horses. Maier testified that the second crop of hay did not grow high enough to cut.

Marvin Maier, the son of George Maier, testified to the same effect as his father, stating that when they moved onto the property in the summer time the springs went dry.

Mr. Nunneley, testifying for plaintiffs, stated that the conversation regarding the spring was for the most part general. However, it was to the effect that there was plenty of water on the property; that Ferrari told Blackwell that, so far as he knew, the spring had never gone dry; and that when he had operated the dairy in the past he had from twelve to sixteen cows pastured in the meadow.

The defendant, Emil A. Ferrari, testified that he was born on the ranch; that he had not represented to Blackwell that the pasture would support fifteen to twenty horses; that he did not state to him that the meadow would support twenty to twenty-five dairy cows; that he did state to Blackwell and Nunneley, in regard to the spring on the ranch, that he had received sufficient water therefrom to supply the cattle and for irrigation of a small garden; that the spring had never gone dry while he was on the ranch, and that he had never represented to Blackwell that there was more than one spring on the property.

Ferrari testified that his only representations to Mr. Blackwell in regard to the productivity or conditions of the ranch

related to the time when he operated the ranch and that the representations made were so limited; that, in regard to the number of cows which could be supported on the property, he told Blackwell he was grazing twelve to sixteen head of cows when he left the ranch, and that no mention was made of the number of horses which the ranch would support.

A number of witnesses residing in the vicinity of the Ferrari property testified in behalf of the defendants, to the effect that the Ferrari ranch had always been considered good property for the production of garden truck and to support stock. These witnesses, with the exception of two, testified to the productivity of the ranch during the time it was operated by Ferrari some ten or twelve years previous to the time of the commencement of suit. Joseph Ahart and Claude West, however, testified to conditions existing on the ranch at the time of the trial. Claude West, whose testimony substantially corroborated the evidence given by Joseph Ahart, was living upon the property and operated the ranch at the time of the trial. He stated that he had twenty head of cattle on the ranch, fourteen of which were milk cows. He said he had been on the property three months, and that he was milking ten or eleven cows, and that he had three head of horses on the place; that he was getting plenty of water from the two wells by means of the pumping plants. He asserted that he had cut one crop of hay and could have cut a second, but that he turned the stock in there to graze.

In support of their right to rescission, the appellants rely most strongly on the following three alleged misrepresentations: That the land would pasture fifteen to twenty horses; that the land would support from twenty to twenty-five dairy cows; that the spring on the property would supply enough water all the year round for the stock or for necessary irrigation. The complaint alleges that as a result of such misrepresentations appellants were damaged by the loss of three cows valued at $109 each which died because of a lack of hay and from eating poisoned weeds growing on the premises; by depreciation in value of fourteen cows as a result of a lack of nourishment in the hay; by failure of cows to produce milk on account of said lack of nourishment; by the death of new-born calves resulting from a lack of nourishment; and for expenditures made by appellants in repairing the buildings and constructing necessary water troughs.

The findings of the trial court specifically conclude that

defendants did not represent that the pasture on the land would support fifteen to twenty head of horses or that the pasture would support from twenty to twenty-five dairy cows; that defendants did not represent that the spring on the property would produce enough water the year round to supply the stock or to irrigate the land.

Conceding that the authorities cited by appellants support the conclusion that "actionable fraud" would have been disclosed by proof of the truth of the allegations of the complaint, it is nevertheless the opinion of this court that appellants have failed to prove by a preponderance of the evidence that the respondents made any of the material misrepresentations alleged in the complaint. The record discloses a decided conflict in the evidence in that regard. As stated by appellants, the issue before the trial court was one of fact, and if there is present in the record substantial evidence in support of the findings of the trial court, it is beyond the province of this court to disturb the judgment on appeal.

The fact that the opinion of the trial court indicates a doubt as to whether the complaint made out a proper case of fraud regardless of the denials of the allegations contained therein is of no moment in the determination of the issues which are presented on this appeal. The opinion of the trial court is not a part of the record on appeal, and it may therefore not be considered for any purpose whatever, even if it is incorporated in a bill of exceptions. (*Cavagnaro* v. *Delmas*, 29 Cal.App.2d 352 [84 P.2d 274]; *Goldner* v. *Spencer*, 163 Cal. 317 [125 P. 347]; *DeCou* v. *Howell*, 190 Cal. 741 [214 P. 244]; 2 Cal.Jur. 488, sec. 235, and p. 688, sec. 394.)

The testimony of defendant Emil Ferrari, which has been sufficiently set forth, is in direct conflict with the testimony of plaintiff Blackwell so far as it relates to the material issues contained in the complaint. Ferrari specifically denied that he had represented to Mr. Blackwell that the pasture on the ranch would support fifteen to twenty horses, or that the meadow would supply twenty to twenty-five dairy cows. The testimony of Ferrari in regard to the spring is also in direct conflict with the allegation that Ferrari represented that the spring would supply sufficient water all the year round for the stock or for irrigation. Ferrari's testimony in this regard was that Blackwell was told there was sufficient water in the spring for the cattle and for a small garden.

The testimony of plaintiffs' witness, George Maier,

fails to support the allegations of the complaint. He testified in regard to the water in the springs, as follows:

"A. I asked Mr. Ferrari then, I says, 'Mr. Ferrari, do not the springs go dry?' and he says, 'No,' and so I let it go on by until I lived on the place. . . . Q. He just said, 'There is plenty of water?' A. I just asked him if the spring went dry; he said, no, there is plenty of water there.''

The foregoing testimony does not support appellants' claim that Ferrari represented that the spring would supply water for the stock or for irrigation all year round. In regard to the alleged misrepresentations on the part of Ferrari in connection with the number of horses and dairy cows which could be pastured and supported upon the land, the following testimony of George Maier appears:

"Q. What did he say about the meadow, supporting how many cattle? A. He did say it would support fifteen or sixteen head of cattle. . . . Q. Did he say anything about pasture? . . . A. That there was good pasture and water over there. Q. How many horses would it support? A. Support from ten to fifteen head of horses for awhile over there in the summer.''

As disclosed, Maier's testimony fails to support the allegations of the complaint. He testified that Ferrari represented that the meadow would support fifteen or sixteen head of cattle and not twenty to twenty-five head as alleged in the complaint. He testified that Ferrari also represented that the land would pasture ten to fifteen head of horses, and not fifteen to twenty head as alleged in the complaint.

It will be observed that Maier does not testify that Ferrari said the land would pasture ten or fifteen horses the year round, but merely that it would support that number of horses "for awhile . . . in the summer.''

It might be contended that the discrepancies set forth in the foregoing testimony are unimportant in determining the question as to whether the respondents by their action are not guilty of "actionable fraud," but as heretofore stated, the question before the trial court, in the final analysis, became one of fact, and in considering such discrepancies together with the testimony of defendant Ferrari, which was an absolute refutation of the alleged representations, we find that a definite conflict in the evidence bearing upon the material allegations of the complaint does exist. Ferrari's testimony relative to the spring on the ranch was to the effect that the spring had never gone dry *during the*

*time he occupied the property.* Those representations in regard to the spring are supported, at least in part, by plaintiff Blackwell's own testimony. He testified: "He said that it never did go dry. It never would go dry." Such representations certainly are inconsistent with the claim of appellants that Ferrari represented that the spring would supply enough water all year round for the stock or irrigation. Although it does appear that during the summer, and after Blackwell had taken possession of the ranch the spring had apparently gone dry, there is no evidence in the record that this spring had ever gone dry during the time that Ferrari occupied the property. Ferrari testified that the spring required regular "cleaning out" and possibly this work was not properly done after the appellants took possession of the property.

We are of the opinion the findings and judgment are adequately supported by the evidence.

It is an established rule of law that the findings of the trial court will not be disturbed on appeal where the evidence as to the issues framed by the pleadings is in sharp conflict. (*Segaloff* v. *Furman,* 209 Cal. 301 [287 P. 92].)

In regard to the evidence given by the various witnesses who testified in behalf of defendants, it may be said that, while such testimony was not direct evidence bearing upon the issue as to whether defendant Ferrari made the alleged misrepresentations, it was material to enable the trial court to determine the good faith of Ferrari at the time of the property transaction. There is no reason to disbelieve the testimony of Claude West, who was operating the ranch at the time of the trial. According to his testimony, the ranch was being supplied with plenty of water through the use of two pumping plants. The stock was in good condition, and the ranch in general was in conformity with the conditions represented by defendant Ferrari.

The judgment is affirmed.

Peek, J., and Adams, P. J., concurred.

A petition for a rehearing was denied August 25, 1943.