[No. 15425.   Department One.—June 9, 1894.]

## E. L. G. STEELE ET AL., RESPONDENTS, *v.* PATRICIO MARSICANO, ETC., APPELLANT.

CONVERSION OF GOODS—ASSUMPTION OF DOMINION.—In order to charge a defendant with the conversion of the plaintiff's goods, he must be shown to have done some act implying the exercise or assumption of title or dominion over them, or some act inconsistent with the plaintiff's right of ownership, or in repudiation of such right.

ID.—ACTS IN IGNORANCE OF OWNER'S CLAIM.—A simple act of intermeddling with another's property, which does not imply any assertion of title or dominion over it, and which is done in ignorance of the owner's claim thereto, and without any intention to deprive him of it, will not constitute a conversion.

ID.—CONVERSION A TORT.—Conversion is a tort, and to establish it there must be a tortious act.

ID.—BAILMENT—RESTORATION TO BAILOR—PROTECTION OF BAILEE.—If a bailee has the temporary possession of property. holding the same as the property of the bailor, and asserting no title in himself, and in good faith restores the property to the bailor, pursuant to the bailment, before he is notified that the true owner will look to him for it, no action will lie against him for its conversion.

ID.—DEMAND AND REFUSAL—IMPOSSIBILITY OF COMPLIANCE—BURDEN OF PROOF AS TO ABILITY.—A demand of the property and a refusal to redeliver it do not of themselves constitute conversion, but are merely

evidence from which a conversion may be established, and, as evidence, may be repelled by proof that a compliance was impossible; and a refusal is not evidence of conversion, unless the party has it in his power at the time to deliver up the goods, and, in order to establish conversion by mere proof of demand and conversion, the plaintiff must also show the ability of the defendant to comply with the demand at the time when made.

ID.—STORING OF SUGAR IN WAREHOUSE—UNAUTHORIZED PURCHASE IN NAME OF BAILEE—DELIVERY TO BAILOR, WHEN NOT A CONVERSION. Where a person who obtained leave to store sugar in a warehouse assumed, without authority, to purchase the sugar from a third party in the name of the owner of the warehouse, and took a receipt in the name of the owner, the transaction does not establish any relation of contract between the owner of the sugar and the owner of the warehouse, who received the sugar as the bailee of the person delivering it; and when the sugar was removed from the warehouse by the bailor before the owner of the warehouse had any knowledge of the ownership of the sugar he is not liable for a conversion of it, and cannot be made liable by a demand and refusal to deliver it to the owner at a time when it was out of his power to comply with the demand.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John J. Roche*, for Appellant.

The defendant never had possession of the sugar, or dominion over it, and is entirely innocent of any conversion thereof. (*Hill* v. *Hayes*, 38 Conn. 532; *Loring* v. *Mulcahy*, 3 Allen, 575; Week's Damnum Absque Injuria, secs. 74, 75.) The defendant was not bound in any way by the conduct of his foreman in permitting the sugar to be left in the store of the Overland Packing Company. (*Fogel* v. *Schmalz*, 92 Cal. 412.)

*Garber, Boalt & Bishop*, for Respondents.

The defendant is clearly liable for the conversion of the sugar. (*Dodge* v. *Meyer*, 61 Cal. 420; *Swim* v. *Wilson*, 90 Cal. 130; 25 Am. St. Rep. 110; *Rogers* v. *Huie*, 1 Cal. 429; 54 Am. Dec. 300; *Hoffman* v. *Carow*, 22 Wend. 318.)

HARRISON, J.—The defendant carries on the business of packing fruit at a warehouse on Battery street, in San Francisco, under the name of Overland Packing Company, and is also the president of the American Salt Company, and has his office, or headquarters, at the office of that corporation, on Sacramento street, in that city. On March 19, 1892, a man named Laton visited the office of the salt company, and inquired for the defendant, saying that he wished to store some sugar with him at his place on Sacramento street. The defendant was absent from San Francisco, and the clerk in charge told him that they had no room, and on his inquiring, whether he could store it with the Overland Packing Company for a few days, the clerk, at his request, knowing that he was an acquaintance of the defendant, telephoned the inquiry to that place, and received an affirmative reply. Laton then visited the Overland Packing Company's place, and, upon seeing where the sugar was to be stored, said he would send it up. He then went to the office of the plaintiffs, representing himself to be a broker for the defendant, and negotiated the purchase in his name of twenty-one tons of sugar, and directed that it be delivered to the Overland Packing Company. The plaintiffs employed their own drayman for that purpose, and when he reached the packing company's place on Battery street the foreman of that place and one of his men took it on the trucks and ran it into the building, and a receipt for its delivery was given to the drayman in the name of the Overland Packing Company. The sugar was delivered on the 22d of March, but the defendant did not learn of its delivery until two days thereafter, when he immediately directed his foreman to tell Laton to take the sugar away, which he did, and Laton removed the sugar the next day. On the Monday following, which was collection day, the defendant received from the plaintiffs a statement of his account or purchase of the sugar, and immediately visited the office of the plaintiffs, and denied having made such purchase. The

record does not show whether the plaintiffs made any explanation of the transaction with Laton, or what steps they took to investigate the transaction, but they seem to have become satisfied that the purchase of the sugar had not been authorized by the defendant, as instead of bringing an action against the defendant for its value, they made a formal demand upon him about two weeks later for its redelivery, and then brought this action charging him with the conversion of the sugar. Judgment was rendered in the court below in favor of the plaintiffs, and the defendant has appealed.

In order to charge the defendant with the conversion of the plaintiff's goods he must be shown to have done some act implying the exercise or assumption of title, or of a dominion over the goods, or some act inconsistent with the plaintiff's right of ownership, or in repudiation of such right. A simple act of intermeddling with another's property, which does not imply any assertion of title or dominion over the property, and which is done in ignorance of the owner's claim thereto, and without any intention to deprive him of it, will not constitute a conversion. If I find a horse in my lot I am not guilty of its conversion if I turn it into the highway, nor is the warehouseman who receives goods from a wrongdoer and afterwards redelivers them to him in ignorance of the claim of another, guilty of their conversion. Conversion is a tort, and to establish it there must be a tortious act. "If a bailee have the temporary possession of property, holding the same as the property of the bailor, and asserting no title in himself, and in good faith in fulfillment of the terms of the bailment, either as expressed by the parties or implied by law, restores the property to the bailor before he is notified that the true owner will look to him for it, no action will lie against him, for he has only done what was his duty." (*Nelson* v. *Iverson*, 17 Ala. 216. See, also, *Burditt* v. *Hunt*, 25 Me. 422; 43 Am. Dec. 289.) In *Parker* v. *Lombard*, 100 Mass. 408, where the defendant took possession of a warehouse in which there was cer-

tain cotton belonging to the plaintiff, but which the defendant, upon information to that effect received from his predecessor, entered upon his books as belonging to another, to whom he subsequently delivered it, it was held that he was not liable for its conversion. In *Hill* v. *Hayes*, 38 Conn. 532, some stolen money had been delivered to the defendant by the thief, to be kept for him. The defendant had no knowledge that the money had been stolen, and in a few days gave it to a third party to be redelivered to her bailor, but it was held that she was not guilty of conversion. (See, also, *Frome* v. *Dennis*, 45 N. J. L. 515; *Loring* v. *Mulcahy*, 3 Allen, 575; *Gurley* v. *Armstead*, 148 Mass. 267; 12 Am. St. Rep. 555.)

A demand of the property and a refusal to redeliver it do not of themselves constitute conversion. They are merely evidence from which a conversion may be established, and, as evidence, may be repelled by proof that a compliance was impossible. (*Hill* v. *Covell*, 1 N. Y. 522.) A refusal is not evidence of conversion, unless the party had it in his power at the time to deliver up the goods. (*Kelsey* v. *Griswold*, 6 Barb. 436.) In order to establish the conversion by mere proof of the demand and refusal, the plaintiff must also show the ability of the defendant to comply with the demand at the time it is made. (*Whitney* v. *Slauson*, 30 Barb. 276; *Johnson* v. *Couillard*, 4 Allen, 446.)

Under these principles, the judgment against the defendant cannot be sustained. As Laton had no authority to negotiate a purchase of the sugar for the defendant, the plaintiffs do not rely upon his pretended agency, but seek to charge the defendant with its conversion by reason of the acts done by himself, claiming that the delivery of the sugar to the defendant, and his subsequent refusal to redeliver it upon their demand, constitute such conversion; but the delivery of the sugar to the defendant was not the result of any act or authority on his part. It was delivered there at the instance of Laton, and must be considered as a delivery

to Laton. As Laton had no authority to bind the defendant, his direction to the plaintiffs to deliver the sugar at the defendant's place of business, and their delivery in pursuance thereof, cannot create any obligations against the defendant in reference to the sugar. The taking of a receipt in the name of the Overland Packing Company is immaterial. It did not establish any relation of contract between the plaintiffs and the defendant; for it was shown by the plaintiffs that this delivery was made at the instance of Laton, and there was nothing in the receipt which indicated that the delivery was made in pursuance of a purchase on behalf of the defendant. The receipt was only a voucher to Laton that the plaintiffs had followed his direction, and had the same effect as though the sugar had been placed on board a vessel for transportation, or in some other warehouse, for which a drayman's receipt was given. It could not place the defendant under any obligation to the plaintiffs, for, at the time of its delivery, there was no statement on the part of the plaintiffs of the purpose with which it was brought to his place, and the defendant was justified in supposing that it was the sugar which Laton had requested might be placed there for a few days.

The defendant must be considered as having received the sugar from Laton, and as his bailee. Before the defendant had any knowledge of the relation of the plaintiffs to the sugar, Laton had removed it from the defendant's packing-house at the direction of the defendant. This direction and the removal, instead of being the exercise of any dominion or control over the sugar by the defendant, was for the purpose of avoiding its control and freeing himself from any connection with it. It was restoring the sugar into the hands and under the control of the party by whom it had been placed upon his property, and was the reverse of assuming any dominion or claim to it. When subsequently the defendant visited the plaintiffs' place of business in response to the bill for the sugar which they had sent him, and

disclaimed the purchase, the plaintiffs do not seem to have acquainted him with the facts of the transaction, and did not question his declaration that he had not made the purchase until some two weeks later, when they made a formal demand for its redelivery. As at this time it was not in his power to comply with the demand, his refusal did not constitute a conversion, and as none of the previous acts done by him with reference to the sugar had been in the assertion of any dominion over it, or with any knowledge of the plaintiffs' rights, or from which any repudiation of their rights could be implied, he cannot be charged with the conversion.

The judgment and order are reversed.

GAROUTTE, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.

BEATTY C. J., and FITZGERALD J., dissented from the order denying a hearing in Bank.