[Civ. No. 9208. Second Appellate District, Division Two.—February 7, 1935.]

ADA S. MARTIN, Respondent, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation), Appellant.

432

Freston & Files, Ralph E. Lewis, Louis Ferrari and Edmund Nelson for Appellant.

Bernard Potter, C. A. Doody and O'Melveny, Tuller & Myers for Respondent.

SCOTT, J., *pro tem.* — Plaintiff recovered judgment against defendant bank for the value of certain bonds, and from such judgment the latter appeals.

It appears that plaintiff owned thirty-six bonds of a par value of $1,000 each, secured by a trust indenture on real property near Los Angeles. She joined certain others in executing, as trustors, a declaration of trust naming defendant bank as trustee and some third persons as beneficiaries.

The trustors deposited with the bank as trustee bonds of par value of $150,000, including plaintiff's thirty-six together with certain other property, all of which said property was to be held in trust in subordination to bonds of the beneficiaries, thereby in effect making the bonds of the latter persons preferred bonds. This trust was started in July of 1927. Within less than a year, the bonds being in default, a bondholders' protective committee was formed in June of 1928 under an agreement entered into by certain bondholders not including plaintiff. After various postponements the property securing the bonds was sold under foreclosure on December 17, 1928, and was bought in by this committee. At the time of the sale the entire issue of bonds outstanding was $1,749,000, and there had been entrusted to the bondholders' protective committee, under an agreement with it, all but $80,000 of these bonds. The property was bid in by the committee at $711,000. On this basis, bondholders who had not placed their bonds in the hands of the committee were entitled to about 39 per cent of the par value of their bonds in cash—thereby sustaining approximately a 61 per cent loss. The bondholders who had come in under the agreement were entitled to an undivided interest in the property in the proportion that their number of shares bore to the total number that were embraced in the protective agreement. When the property was thus bought in at foreclosure sale by the bondholders' protective committee it was at once encumbered to secure money to pay the bondholders who had not come in, and to use for other purposes. This encumbrance was later foreclosed, the property was lost and the shares of the bondholders in the enterprise became valueless.

Two days before the property was sold under the first foreclosure, to wit, December 15, 1928, defendant bank deposited the bonds of plaintiff with the bondholders' protective committee and signed the agreement required by said committee, and the loss of the bonds was thereby incurred as above related. The trial court gave judgment for plaintiff for $14,400 plus interest at seven per cent from date of sale of the property, based upon a finding that said principal sum was the reasonable market value of the bonds on that date.

The trial court made findings of fact essentially as above outlined, and further found that by reason of the termination of the said trust which had been entered into in July, 1927, plaintiff, on June 12, 1931, became entitled to the bonds; that she demanded them of defendant bank on February 19, 1932, and that the latter has failed and refused to deliver any of them. It further found that defendant bank had no right or authority to part with possession of the bonds; that it parted with all control over them when they were deposited under the bondholders' protective agreement; that plaintiff did not know of this latter action prior to March 1, 1929; that she had not approved nor ratified it and was not estopped to proceed against defendant; that in addition to their being held under the trust agreement, these same bonds, at the time defendant bank turned them over to the bondholders' protective committee, were also being held by it as security for payment of a promissory note owing by plaintiff to the bank, which was originally $30,000 but had been reduced to $24,000; that plaintiff paid the note October 22, 1929, and on demanding her bonds was told they were being held under the trust agreement; that there is no evidence of bad faith of defendant bank in depositing the bonds with the committee, and that in doing so it acted in good faith, believing said deposit was of advantage to plaintiff.

It cannot be questioned that appellant parted with custody and control over respondent's bonds when it deposited them with the bondholders' committee under agreement with the committee which vested them with legal title and said that "no limitation is imposed on the powers of the committee as the legal owner of such bonds except the duty of doing whatever in its opinion is calculated to promote the best interests of the depositing bondholders", and appointed said committee its attorney in fact with full power, giving it a lien on the bonds for all expenses and discharging committee members of liability except for personal wilful misconduct in dealing with the bonds.

Appellant relies on section 31 of the trust agreement, under the terms of which the bonds were placed with it in July, 1927, which is as follows: "During the continuance in force of this trust, the trustee may exercise any and all rights of every kind or nature whatsoever at any time

incident to the ownership of any subordinated bonds at any time held in trust hereunder by the trustee.'' It contends that its action was amply justified because of the dilemma which confronted plaintiff as owner of the bonds: (1) to remain outside of the bondholders' agreement and get but 39 per cent of par value of the bonds, or (2) to join in the agreement and get an undivided share of property worth at least as much as the par value of outstanding bonds and appraised at various figures much in excess of that amount. The ultimate loss of the property is attributed to the economic depression, which is declared to have been beyond the predictions of reason.

On this point the position of the bank cannot be sustained because of terms of the trust agreement other than that quoted which precluded any such latitude on its part in dealing with the bonds. Without quoting the trust agreement, it appears that trustee, defendant bank, accepted the bonds in trust to hold them for the benefit of the holders of preferred bonds, to perform certain functions incidental thereto, and at the conclusion of the trust to hold any property then in its hands subject to order of the legal owner. There is nothing in the trust agreement to warrant a construction of section 31 which would permit appellant to relinquish possession and control of the subject-matter of the trust. ■ The defense that it may have appeared to the bank that the course it followed was more advantageous to respondent than to secure for her the cash market value of the bonds is not available to it in view of the provisions of the trust agreement. It might be observed that although the property securing the bonds was appraised at more than the total value of the bonds at the time of the sale, there was apparently no bid for a greater amount than the one accepted by the committee, which was about 39 per cent of the total par value of the bonds.

''If a trustee enters into any arrangement with reference to trust funds which surrenders or limits his control over them, he becomes a guarantor of the fund, irrespective of his motive or whether his surrender of control was the cause of the loss of the fund. In such case, in the event of loss, the court will not enter upon an inquiry whether the loss is due to such abdication of control.'' (*Gaver* v. *Early,* 191

Cal. 123, 126 [215 Pac. 394, 395]. See, also, 26 R. C. L. 1281, sec. 131.)

This is not a case of an active trust in which the trustee is vested with plenary powers and the trust agreement nowhere directly or by inference permits a surrender of· control and direction to another. (44 L. R. A. (N. S.) 873, note.) ''The making of investments is fundamental, and not merely administrative, in administering the trust; consequently, in accordance with the general rule, the making of investments cannot be delegated by the trustee to another.'' (65 C. J. 797, sec. 672.) The advice of its attorney cannot shield defendant from responsibility. (*Estate of Halbert*, 48 Cal. 627.)

Appellant contends that this suit was barred by section 338 of the Code of Civil Procedure, fixing a three-year limitation on such an action for tort for conversion of the bonds. It would seem, however, that if appellant's designation is correct, and if the action is not merely one for breach of a written contract, as urged by respondent, nevertheless the statute would not bar recovery. ''If the original taking be wrongful, the bar of the statute runs from the time of the unlawful taking; but where the original taking is lawful, the statute is not set in motion until the return of the property has been demanded and refused, or until a repudiation of the owner's title which is clearly and unequivocally brought home to him, is made.'' (16 Cal. Jur. 525, sec. 124; *Varrois* v. *Gommet*, 43 Cal. App. 756 [185 Pac. 1001]; *Odell* v. *Moss*, 130 Cal. 352 [62· Pac. 555].) From the record it is apparent that the action filed March 15, 1932, was instituted within three years from the discovery by plaintiff of the repudiation by appellant of its obligation under the trust.

It is finally suggested that the finding of the trial court as to the market value of the bonds is not supported by any evidence. The par value of the bonds was *prima facie* evidence of their value (*Revert* v. *Hesse*, 184 Cal. 295 [193 Pac. 943]); and evidence was produced sufficient to support a finding that the market value of the bonds was at least 39 per cent of such par value, for which amount judgment was rendered.

Judgment affirmed.

Stephens, P. J., and Crail, J., concurred. ·

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1935.