[Civ. No. 14433.  First Dist., Div. One.  Dec. 29, 1950.]

SUNRISE PRODUCE COMPANY, INC. OF SAN FRAN-
CISCO (a Corporation), Respondent, v. CHARLES
MALOVICH, Appellant.

Calvin H. Conron, Jr., for Appellant.

Elios P. Anderlini and Herbert Chamberlin for Respondent.

BRAY, J.—Defendant appeals from a judgment on the pleadings in favor of plaintiff.

## QUESTION PRESENTED

May a claim barred by the statute of limitations at the time plaintiff's action is filed, nevertheless be pleaded as a counterclaim?

## RECORD

Plaintiff filed suit on common counts for the sum of $3,850, for goods, wares and merchandise sold and delivered to defendant. Defendant answered, admitting the allegations of the complaint but setting up a counterclaim for trailer rentals in the sum of $40,450. He also cross-complained for the same amount. The court sustained without leave to amend plaintiff's demurrer to the cross-complaint, granted plaintiff's motion to strike the cross-complaint and the counterclaim from the answer, and granted plaintiff's motion for judgment on the pleadings.

## CROSS-COMPLAINT

Both the counterclaim and cross-complaint were for trailer rental alleged to have accrued between December 1, 1946, and June 15, 1947. This suit was filed July 6, 1949, or a little over two years from the last date. Defendant concedes that the court was correct in striking the cross-complaint for the reason that the matters set up therein are completely foreign to the transaction pleaded in the complaint and hence do not meet the requirements of section 442 of the Code of Civil Procedure which limits cross-complaints to the "contract,

transaction, matter, happening or accident upon which the action is brought'' etc.

## May Outlawed Claim Be Pleaded in Counterclaim?

Prior to the year 1946 and the case of *Jones* v. *Mortimer*, 28 Cal.2d 627 [170 P.2d 893], it seemed to be the well-settled rule in California that whatever claim would be barred if separately asserted, was not available as a setoff or counter-claim. (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740 [47 P.2d 273].) There was an exception to the effect that the filing of plaintiff's complaint suspended the running of the statute as to the counterclaim, and hence if the latter was not barred at that time, it could be pleaded later. As the statute had run against defendant's claim at the time the suit was filed, defendant could not have come within either the rule or the exception. But the rule was changed in the Jones case, which arose out of the following circumstances: In December, 1933, the petitioner sued the California Mutual Building and Loan Association and Mortimer, the Building and Loan Commissioner, who, prior thereto, had taken over the association, for services rendered. In 1938 the commissioner levied an assessment of $100 per share against all of the stockholders of the association. Petitioner held four shares and hence was liable for an assessment of $400. In 1940 petitioner obtained a judgment against the association and the commissioner for $1,536.10, the judgment being payable in course of liquidation. The commissioner did not plead the $400 indebtedness as a counterclaim or offset in the suit. In 1941 the commissioner sued petitioner for $368.05, being the amount of the assessment less some liquidating dividends which were credited against it. Petitioner then applied for a writ of execution or other relief to enforce his judgment. The commissioner claimed the right to set off the $368.05 balance of the assessment as against plaintiff's judgment. The court allowed such setoff. ''To support his claim that the commissioner may not set off the assessment against his judgment, plaintiff contends that the right was lost by virtue of the commissioner's failure to file a counterclaim for the amount of the assessment in plaintiff's action, relying upon section 439 of the Code of Civil Procedure. That section provided in 1940 (the time that plaintiff obtained judgment in his action), and at the present time: 'If the defendant omits to set up a counterclaim upon a *cause arising out of the transaction set forth in the complaint as the foundation of the*

*plaintiff's claim,* neither he nor his assignee can afterwards maintain an action against the plaintiff therefor.' (Emphasis added.) Aside from any other reason the italicized portion of that section prevents its application here. As far as appears from the record, the transaction involved in plaintiff's action was for services ˉrendered to the association, whereas the assessment against plaintiff was based on his liability as a stockholder of the corporation. Giving the word *'transaction'* its broadest meaning we cannot bring the two claims here involved within its meaning. They arose out of two separate and wholly independent transactions.'' (Pp. 629-630.)

"There is the matter of the statute of limitation having run on the assessment. Assuming that to be true the assessment is still a proper setoff. It has been held generally or assumed without discussion that a counterclaim in its setoff aspects may be defeated by the defense of the statute of limitation. [Citations.] On the other hand it has been intimated that where claims are compensated under section 440 of the Code of Civil Procedure the statute of limitations is not a bar. [Citation.] But none of these cases, holding the statute to beˉa bar, except *Lyon* v. *Petty, supra,* [65 Cal. 322 (4 P. 103)] mention section 440 of the Code of Civil Procedure heretofore quoted. The cross-demands here, in the language of section 440, *'have existed* between persons' —plaintiff and defendant. They existed between them at least at the time the assessment became due and plaintiff's action on his claim was pending. They have existed under circumstances where if either brought an action thereon the other could have set up a counterclaim. Defendant could have set up the assessment as a counterclaim when the two coexisted and there was no question about the statute of limitation on either claim. The next step is that the demands are *compensated.* That can mean nothing more or less than that each of the claimants is *paid* to the extent that their claims are equal. To the extent that they are *paid,* how can the statute of limitation run on either of them? There is no outstanding claim upon which the statute may run. It is discharged.'' (Pp. 632-633.)

This is a fair rule as it provides in effect that plaintiff's and defendant's claims, having coexisted in point of time, are deemed compensated to the extent that they equal each other, and the statutes of limitation should not bar the defendant's right to show that compensation.

■ Plaintiff attempts to distinguish our case from the Jones case upon three grounds. The first is that in the Jones case the defendant's counterclaim did not arise until after the commencement of the action and hence the statute of limitations was not available to plaintiff. While there is that distinction between the two cases, the reasoning of the court, extracts of which are herein set forth, shows that the rule it adopted is not limited as claimed by plaintiff.

■ The second alleged distinction is that the counterclaim in the Jones case was a liquidated one while that here is an unliquidated one. We can see no logical difference in applying the rule to the two situations. There is language in 23 Cal.Jur. 254 which seems to support plaintiff's contention. It is based solely on dicta in the case of *Iowa & C. Land Co.* v. *Temescal Water Co.*, 95 F. 320. Counsel have cited, and we have found, no other case supporting this theory. In the Iowa Land case the court reasons that the cross-demands which section 440 of the Code of Civil Procedure permits to be set up, must be liquidated ones, and that "The operation of the statute now under consideration is quite a different thing from the judicial procedure by which a claim for unliquidated damages is set off against fixed indebtedness. If A. sues B. to recover on a promissory note, and B. counterclaims against A. for unliquidated damages, the court can ascertain the damages, and apply them to the note, rendering judgment for the party in whose favor a balance is thus made to appear. The doctrine of compensation declared in said section 440, however, cannot be applied in the supposititious case above stated, for the reason already indicated,—that the statute operates upon the cross demands to which it refers the instant they co-exist, and at that time the cross demands in the case above supposed are incapable of mutual application, as one of them (the claim for unliquidated damages) is indeterminate." (P. 321.)

This reasoning is not only artificial but also destructive of the legislative purpose. The language of section 440 is explicit. "When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be compensated, so far as they equal each other . . ." Section 438 specifies that a counterclaim "must tend to diminish or defeat the plaintiff's recovery and must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had . . ." There

is nothing in either of these sections that requires the cross-demand to be a liquidated one. It is a little difficult to understand the reasoning in the Iowa case where the court in its illustration of A. suing B. on a promissory note, says that B. may counterclaim for unliquidated damages and yet goes on to say that under section 440 such a counterclaim cannot be set up. In *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 P. 474], the court said (p. 438): ''Nor is it a valid objection to a counterclaim that it is based upon an *unliquidated* demand. Neither the old nor the new statute requires that the claim be liquidated.''

█ Moreover, defendant alleged not only that the amount he was suing for was the reasonable rental value of the trailers, but also the *agreed* value. So on the face of the counterclaim it appears that it was a liquidated claim.

### ACCOUNT STATED

█ The third attempted distinction of plaintiff of the Jones case is that here the plaintiff alleged in one of its causes of action that on June 11, 1948, an account was stated between plaintiff and defendant by which it was determined that defendant was indebted to plaintiff in the sum of $3,850. Defendant's answer admitted all of the allegations of plaintiff's complaint including this. Therefore, contends plaintiff, whatever demands defendant had against plaintiff were settled, superseded, and eliminated as cross-demands. But the admission of an account stated does not necessarily mean that cross-demands are included in the statement of the account. Demands arising out of the same transaction are; but here, two separate and distinct transactions are involved. █ Whether the statement of the account between the parties actually included the cross-demands or another transaction depends upon the circumstances, and is a matter for proof at the trial. It may very well be that the acknowledgment by defendant of the account for goods, wares and merchandise in this case, in nowise included the transaction concerning the rental of trailers, apparently an entirely different and independent matter. Plaintiff has cited a number of cases to support its contention that an account stated settles all transactions between the parties. An examination of the cases shows that the courts were passing on the effect of the accounts stated after hearing the evidence and determining what transactions were included. In none of them was there a situation where the court was

called on to hold that the fact that there was an account stated, as here, for one transaction, included, as a matter of law, and in the absence of proof, a settlement of the cross-demands on a separate, independent transaction.

The court correctly sustained the demurrer to the cross-complaint and struck out the cross-complaint, but incorrectly struck out the counterclaim and granted the motion for judgment on the pleadings.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 26, 1951.