The **PICKFORD CORPORATION**,
Plaintiff,

v.

**DE–LUXE LABORATORIES**, Inc., et al.,
Defendants.

No. 16882.

United States District Court
S. D. California,
Central Division.

April 10, 1958.

---

Sull Lawrence, Culver City, Cal., for plaintiff.

Ben Erlich, Beverly Hills, Cal., for defendant Motion Pictures for Television, Inc.

Musick, Peeler & Garrett, by Jesse O'Malley, Los Angeles, Cal., for defendant De-Luxe Laboratories, Inc.

HALL, District Judge.

The plaintiff or her predecessor in title deposited the original negatives of the film "Tonight or Never" with defendant De-Luxe Laboratories in 1941. No written contract of deposit or bailment was entered into, nor was any term of deposit fixed; De-Luxe used the negatives to make prints for exhibition on order of the depositor, and in the meanwhile stored the negatives, without charge, in fireproof vaults, and secured its compensation from its profit on making the prints; all in accordance with the custom of the trade.

On April 5th, 1951, De-Luxe received a letter from a corporation—not then, but since March 17, 1954—wholly owned by

the plaintiff, which directed the delivery of several positives prints of the film to the other defendant Telinvest, Inc. On June 20, 1951, a wholly owned subsidiary of Telinvest took delivery of the prints for Telinvest, which were thereafter exhibited by Telinvest on television. The first such exhibition occurred on April 1, 1952. On August 5, 1952, the plaintiff demanded of De-Luxe that the negatives be returned to her. The suit was filed June 25, 1954.

Both parties agree that the law of the forum, i. e., California, applies.

The two-year statute of limitations is applicable. C.C.P. 339(1).

■■ The action is not one for conversion of the actual reels of film upon which the film play "Tonight or Never" was recorded, but is one for conversion of the "literary property"—the "intellectual production"—the sights and sounds emanating from the film in the sequence of the story "Tonight or Never." Italiani v. Metro-Goldwyn-Mayer Corp., 1941, 45 Cal.App.2d 464, 114 P.2d 370, 372, is squarely in point and is controlling. It held that property such as involved in this action "is an intangible incorporeal right, and exists separate and apart from the property in the paper on which it is written, or the physical substance in which it is embodied," and applied the two-year statute of limitations.

■ If the plaintiff is suing for the reels of film as distinguished from the "literary property," then her case must fail for lack of the jurisdictional amount; no proof at all was offered that the value of the reels of film exceeded $3,000. In fact, the Court can take judicial notice of the commonly known fact that such exposed reels of negative film without the literary property thereon would be worth practically nothing.

The matter as to *when* the statute began to run presents two questions of mixed law and fact: First, when did the conversion occur; second, does the statute begin to run when '(a) the conversion occurred, or (b) when the plaintiff

had either notice of the conversion, or of an adverse claim to the property?

The plaintiff has cited a number of cases to the effect that a conversion occurs when the bailee refuses to re-deliver property which has been deposited with bailee. Those cases are not in point because the intangible incorporeal property, viz.: the sight and sound in sequence of the story on the motion picture film had been exhibited on television before the date of the demand on August 5, 1952, and could not possibly be returned by the defendant, De-Luxe, or anyone else. The law does not require the impossible. Cal.C.C. 3531. The controlling law in this respect is found in Steele v. Marsicano, 1894, 102 Cal. 666, 36 P. 920, 921, where the Court held that a conversion occurs when bailee is shown to have done some act implying the exercise or assumption of title, or of dominion over the property, *"or some act inconsistent with plaintiffs' right of ownership, or in repudiation of such right."* The Court further stated in that case that refusal to re-deliver property by bailee upon demand was in some cases evidence of conversion, but it also held that the refusal of bailee to re-deliver property upon demand is not evidence of conversion unless bailee "had it in his power at the time to deliver up" the property at the time of the demand. Steele v. Marsicano, supra, 102 Cal. at page 670, 36 P. at page 921.

■ Between the date of delivery of the prints by De-Luxe to Telinvest on June 20, 1951, and the date of the first exhibition on television on April 1, 1952, the plaintiff could, upon demand, have been made whole by the return of the negatives and the prints. But after the exhibition on television on April 1, 1952, which continued thereafter over various stations prior to the date of the demand on August 5, 1952, the defendant De-Luxe, or Telinvest, could not make the plaintiff whole by such return. It was, therefore, not in their power to re-deliver the property at the time of the demand on August 5, 1952. The act of defendants "inconsistent with plaintiff's right

of ownership" was the delivery by De-Luxe to Telinvest of the prints on June 20, 1951. That, therefore, was the date of the conversion.

Defendants contend that the statute starts to run on the date of the actual conversion, regardless of the knowledge of the bailor, and cites cases in support of that position, of which Coy v. E. F. Hutton & Co., 1941, 44 Cal. App.2d 386, 391, 112 P.2d 639; Rose v. Dunk-Harbison Co., 1935, 7 Cal.App. 2d 502, 46 P.2d 242; and First National Bank in Richmond v. Thompson, 1943, 60 Cal.App.2d 79, 140 P.2d 75, are typical. The plaintiff, on the other hand, relies on those cases of which Martin v. Bank of America, National Trust & Savings Ass'n, 1935, 4 Cal.App.2d 431, 41 P.2d 200, is one. This case was not modified, overruled, or distinguished in any of the cases relied on by defendants. The Court in the Martin case states the general rule to be as follows (4 Cal.App.2d at page 436, 41 P.2d at page 202):

"If the original taking be wrongful, the bar of the statute runs from the time of the unlawful taking; but where the original taking is lawful, the statute is not set in motion until the return of the property has been demanded and refused, *or until a repudiation of the owner's title which is clearly and unequivocally brought home to him.*" (Italics supplied.)

While that was an action involving an express trust, there can be no doubt that under the facts here, there was a bailment which is broadly defined to be "the delivery of a thing in trust for some special object or purpose, upon a contract, express or implied, to conform to the object or purpose of the trust." [7 Cal.Jur.2d 616.] And even though there was no express contract here, there was a voluntary deposit of the property with Deluxe, as that term is defined by California Civil Code, Section 1814[1].

I accept as prevailing the doctrine announced in Martin v. Bank of America National Trust & Savings Ass'n, supra. This is particularly so in view of Section 1825 of the California Civil Code[2] requiring notice to the owner by a depositary when any action adverse to his interest is taken. The failure of the bailee in Branch v. Bekins Van & Storage Co., 1930, 106 Cal.App. 623, 290 P. 146, to notify the bailor of a writ of attachment upon the property of bailor cannot be distinguished from the order to De-Luxe by someone other than plaintiff, under claim of right, to deliver the prints of plaintiff's picture.

The evidence concerning notice to the plaintiff of an adverse claim is conflicting. The testimony of plaintiff was uncertain, confusing and contradictory. But from the whole case, I conclude that the evidence preponderates in favor of clear and certain notice to the plaintiff in March of 1952, of a claim adverse to her. That was more than two years prior to the filing of the action on June 25, 1954, and thus plaintiff's cause of action is barred by the statute of limitations.

That being so, it is unnecessary to reach the other questions raised by the parties.

The defendants are entitled to judgment upon findings of fact and conclusions of law in accordance with the foregoing, to be prepared and submitted under the Rules.

1. "§ 1814. *Voluntary deposit; depositor and depositary defined. Voluntary deposit, how made.* A voluntary deposit is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party. The person giving is called the depositor, and the person receiving the depositary."

2. "§ 1825. *Adverse claims; notice to beneficiary of deposit Notice to owner of adverse claim.* A depositary must give prompt notice to the person for whose benefit the deposit was made, of any proceedings taken adversely to his interest in the thing deposited, which may tend to excuse the depositary from delivering the thing to him."