**KING BROS. PRODUCTIONS, INC.,**
Plaintiff,

v.

**RKO TELERADIO PICTURES, INC.,** The General Tire & Rubber Company, Universal Pictures Company, Inc., Thomas F. O'Neil, Daniel T. O'Shea, Edward L. Walton and Walter Branson, Defendants.

United States District Court
S. D. New York.
July 30, 1962.

272

Cahill, Gordon, Reindel & Ohl, New York City, for plaintiff, Paul W. Williams, Abner P. Slatt, H. Richard Schumacher, Phaedon J. Kozyris, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant, RKO Teleradio Pictures, Inc., A. Vernon Carnahan, Richard L. Bond, M. Lauck Walton, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff King Bros. Productions, Inc. (King Bros.), an independent motion picture producer, sues to recover damages in excess of $12,000,000 allegedly arising out of the discontinuance of the world wide motion picture distribution business conducted by defendant RKO Teleradio Pictures, Inc. (RKO) [1] through which certain King Bros. films were distributed. The defendants, in addition to RKO, include General Tire & Rubber Co. (General Tire), the parent of RKO, Universal Pictures Company, Inc. (Universal), which was licensed by RKO to distribute films in the United States and its possessions when RKO discontinued its film distribution business, and four individuals about whom the papers before me contain little, if any, information.

Jurisdiction is based on diversity of citizenship (28 U.S.C.A. § 1332) and, as to the sixth claim, on a federal question (28 U.S.C.A. § 1331) arising under the Sherman and Clayton Acts, 15 U.S.C.A. §§ 1 et seq., 12 et seq.

The action was instituted in the United States District Court for the Southern District of California in November 1958, and was transferred to this court in May 1959 under 28 U.S.C. § 1404(a).

King Bros. now moves against a counterclaim pleaded against it in the answer of RKO for judgment on the pleadings pursuant to Rule 12(c), F.R.Civ.P., 28 U.S.C., or, in the alternative, for summary judgment pursuant to Rule 56, F.R.Civ.P.

The complaint pleads six separate claims. The first three of these are against RKO only and are for alleged breach of contracts providing for the production by King Bros. and the distribution by RKO of three motion pictures, respectively "Drums In The Deep South", "Carnival Story," and "The Brave One".

---

1. Subsequent to the commencement of the action RKO changed its corporate name to RKO General, Inc.

The fourth claim against RKO, General Tire and the four individual defendants, and the fifth against all of the defendants, are for common law fraud and deceit and conspiracy to deceive. The sixth and final claim, also against all of the defendants, is based on an alleged conspiracy to violate the Sherman and Clayton Acts. (15 U.S.C.A. §§ 1 et seq., 12 et seq.)

RKO answered on September 29, 1960, after the case had been transferred to this court.[2]

The RKO answer admits various contractual relations with King Bros. relating to the three pictures in question but in substance denies the material allegations of the complaint relied on to establish liability. It also pleads the counterclaim to which the present motions are directed which reads in its entirety as follows:

> "On information and belief, the script for the motion picture THE BRAVE ONE was the property of RKO; plaintiff has obtained said script by means and at a time known to it but not at this time known to RKO; said script was not sold to plaintiff by RKO; plaintiff has converted said script to its own use; the value of said script was in excess of Two hundred and fifty thousand dollars."

Judgment is demanded against plaintiff for this sum with interest and costs.

The plaintiff contends that it is entitled to judgment because: (1) this court lacks jurisdiction over the counterclaim; (2) even if jurisdiction exists the counterclaim is barred by a two year California statute of limitations; and (3) in any event RKO is estopped because of a prior course of conduct from now asserting this counterclaim.

Since matters outside the pleadings have been presented to the court by affidavit, the motion will be treated as one for summary judgment and disposed of

as provided in Rule 56. (See Rule 12(c), F.R.Civ.P.)

The facts relevant to the present motion are as follows:

Prior to 1956 RKO Radio Pictures, Inc. (RKO Radio), a Delaware corporation, was one of the eight leading distributors of feature length motion pictures in this country. It was known in the motion picture industry as a "major distributor". It was in the business of distributing and licensing for exhibition films produced both by itself and by independent producers.

RKO Radio maintained a large and well-staffed distribution organization in this country and abroad. Its personnel, business practices and abilities in this area were well known and highly thought of throughout the motion picture industry.

On December 31, 1955, RKO Radio became merged into General Teleradio, Inc., also a Delaware corporation. General Teleradio, Inc. acquired all of the assets and assumed all of the liabilities and obligations of RKO Radio and changed its name to RKO Teleradio Pictures, Inc. (defendant RKO). RKO continued to engage in the business of motion picture distribution for some time after the merger.

King Bros., a California corporation, is an independent producer of motion pictures. It had contracted with RKO Radio for the distribution of several of its films. Three of those contracts are subjects of this litigation. They are the contract of May 18, 1951 dealing with the film "Drums In The Deep South", the contract of June 1, 1953 dealing with "Carnival Story", and the contract of January 3, 1955 dealing with "The Brave One".

"Drums In The Deep South" was produced by plaintiff and then delivered to RKO Radio on July 15, 1951. RKO Radio distributed the picture until its merger into General Teleradio, Inc., at

---

**2.** Defendants General Tire and Universal have also filed answers. It does not appear whether or not the individual defendants were served or appeared in the action. In any event, they do not affect the present motion.

which time defendant RKO took over and handled the distribution in the United States and Canada until February 1, 1957, and abroad until June 30, 1958.

"Carnival Story" was produced by plaintiff and then delivered to RKO Radio on March 1, 1954, and was distributed first by RKO Radio and then by RKO for the same period of time.

The third film, "The Brave One", described in the contract between the parties as based on "an original screenplay by Robert Lyle Rich entitled 'The Boy and the Bull' * * * and produced principally on location in Mexico", was made by plaintiff at a cost of $723,000. It was actually based on a story by Dalton Trumbo, then using the nom de plume Robert Rich, for reasons which it is not necessary to discuss here.

"The Brave One" was delivered to RKO Radio on May 1, 1956, and opened in three regular motion picture theatres and a number of drive-in theatres, all in Los Angeles County, California, on October 26 of that year. Like the two earlier films, it was distributed by RKO Radio and later by defendant RKO until February 1, 1957 in North America, and until June 30, 1958 elsewhere.

Beginning in mid-November 1956 it was rumored in the motion picture industry and in the press that RKO intended to disband its distribution organization. Plaintiff protested on the ground that the rumored action would constitute breach of RKO's contracts with it. It allegedly received assurances, however, from RKO, General Tire and the individual defendants that in fact no such steps were anticipated.

Nevertheless, on January 21, 1957, RKO licensed defendant Universal to distribute the films then in RKO' hands, including the three King Bros. pictures, in the United States, Alaska, Guam, and to the United States Armed Forces overseas.

On February 1, 1957, Empire Universal Films Limited (Empire) was licensed to distribute these films in Canada, its maritime provinces and Newfoundland. Finally, on June 25, 1958, J. Arthur Rank Overseas Film Distributors Limited (Rank) was licensed to distribute the films involved abroad. RKO then disbanded its distribution organization and ceased to engage in the business of distributing films.

King Bros. contends that this course of conduct by RKO breached its contracts for the distribution of its films and that it was damaged thereby because the licensees Universal, Empire and Rank were not capable of handling the distribution of the three pictures involved here as profitably as RKO could have done. Accordingly, King Bros. seeks damages from RKO in the amount of $2,000,000 on its claim for breach of "The Brave One" contract, $200,000 on its claim for breach of the "Carnival Story" contract, and $10,000 on its claim for breach of the "Drums In The Deep South" contract.

The additional allegations on which plaintiff bases its claims for common law conspiracy and deceit and for violation of the Sherman and Clayton Acts against RKO and the other defendants as well complicate the factual situation further but are not material to the motion now before me. It is unnecessary to discuss them here.

(1)

Turning first then to King Bros.' first contention, it is its position that RKO's counterclaim for the "conversion" of the script for "The Brave One" is permissive in nature, lacks an independent basis for federal jurisdiction and must therefore be dismissed. King Bros. argues that despite the existence of diversity of citizenship, jurisdiction is lacking in this court because § 225 of the New York General Corporation Law, McKinney's Consol. Laws, c. 23 [3] bars suit on a

---

3. "§ 225. Action against foreign corporation by another foreign corporation or nonresident

"An action against a foreign corporation may be maintained by another foreign

corporation, or by a nonresident, in one of the following cases only:

"1. Where the action is brought to recover damages for the breach of a contract made within the state, or relating

claim of this nature in the courts of the State of New York, and that this section should also bar such a suit in a federal court sitting in this State.

The basic assumption underlying King Bros.' first contention is not tenable. It is therefore unnecessary to determine whether § 225 applies in the case at bar. When a counterclaim is compulsory rather than permissive in nature there is no need for an independent basis of federal jurisdiction to exist. A compulsory counterclaim is auxiliary to the plaintiff's claim and needs no independent federal jurisdictional grounds to support it. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); United Artists Corporation v. Masterpiece Productions, Inc., 221 F.2d 213 (2 Cir. 1955). See, also, 3 Moore's Federal Practice (2 ed. 1948) para. 1315 and cases cited therein.

Rule 13(a), F.R.Civ.P., provides that a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *." This language "has been broadly interpreted to require not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them." United Artists Corporation v. Masterpiece Productions, Inc., supra, at p. 216 of 221 F.2d.

Here, the first claim pleaded in the complaint is for breach of a contract between King Bros. and RKO which provided for the production and distribution of the film "The Brave One". The RKO counterclaim in essence claims that the story on which the film was based was never plaintiff's property and that plaintiff had in fact wrongfully converted the story to its own use. The counterclaim, in short, attacks King Bros.' title

to the script, and implicitly denies its right to contract with reference thereto.

It appears on the basis of the papers now before me that if RKO is successful in establishing its allegations, plaintiff's first claim must necessarily fall. Conversely, if plaintiff is successful in obtaining judgment on its first claim it is probable that defendant RKO would be collaterally estopped from attacking King Bros.' title to the property which is the subject of the contract on which that claim was based.

Thus, RKO's counterclaim is intimately related to the contract on which plaintiff bases its first claim. The word "transaction" in Rule 13(a) cannot be read in such a restrictive sense as to limit compulsory counterclaims in actions for breach of contract to those addressed to the specific breach on which a plaintiff bases his claim for breach. The spirit and intent of Rule 13(a) requires that the entire contractual relationship be deemed to be included within the word "transaction" in cases sounding in contract. Cf. National Equipment Rental, Ltd. v. Fowler, 287 F.2d 43 (2 Cir. 1961).

There is clearly a "logical relation" between a claim for breach of contract and a counterclaim alleging that the property which was the subject of the contract never belonged to the party suing for its breach. The counterclaim here must be regarded as compulsory in nature and no independent basis of jurisdiction need therefore be established. Moore v. New York Cotton Exchange, supra; United Artists Corporation v. Masterpiece Productions, Inc., supra.

### (2)

Plaintiff next contends that the counterclaim must be dismissed because an

---

to property situated within the state, at the time of the making thereof.

"2. Where it is brought to recover real property situated within the state, or a chattel, which is replevied within the state.

"3. Where the cause of action arose within the state, except where the object

of the action is to affect the title to real property situated without the state.

"4. Where a foreign corporation is doing business within this state.

"Within the meaning of this section, a foreign corporation shall not include a corporation located in this state and created by or under the laws of the United States."

applicable California statute of limitations has run. The determination of this question requires consideration of rather complex issues arising under 28 U.S.C. § 1404(a).[4]

In order to determine whether RKO's counterclaim is time barred, it is necessary in the first instance to determine the nature of the claim and then to ascertain what statute of limitations is applicable to it. Plaintiff has assumed that California law governs for these purposes, and, indeed, had this action remained in the federal courts in California, that would have been the case. See Pickford Corporation v. De-Luxe Laboratories, Inc., 161 F.Supp. 367 (S.D. Cal., 1958). However, the action is now in the Southern District of New York, pursuant to § 1404(a).

Ordinarily in a diversity action, under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), principles, a federal court sitting in New York would in the first instance look to the law of New York, and determine what law is applicable under New York rules as to choice of law. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York law, for conflicts purposes, the determination of the nature of a claim is a matter of procedure and accordingly is governed by the law of the forum. The New York Life Insurance Company v. Aitkin, 125 N.Y. 660, 26 N.E. 732 (1891); Andrews v. Herriot, 4 Cow. 508 (1825). Thus, if the New York law of conflicts governs this action the nature of the counterclaim is governed by New York rather than California law.

But the question of what law must be applied in the first instance by a federal court to which a diversity suit has been transferred under § 1404(a) is not free from doubt. See 1 Moore's Federal Practice (2 ed. 1961) para. 0.145 [4.–5] and cases cited therein; Currie, The Erie Doctrine and Transfer of Civil Actions, 17 F.R.D. 353 (1955); Kaufman, Observations on Transfers Under Section 1404(a) of the New Judicial Code, 10 F.R.D. 595 (1950); Hart and Wechsler, The Federal Courts and the Federal System (1953) p. 980.

On the one hand, it has been held that, despite transfer the whole body of law which would have been applied by the federal district court in which the action was initially filed continues to govern and must be applied by the transferee court. Headrick v. Atchison, Topeka & Santa Fe Ry. Co., 182 F.2d 305 (10 Cir. 1950); Hargrove v. Louisville & Nashville Railroad Company, 153 F.Supp. 681 (W.D.Ky.1957); Greve v. Gilbraltar Enterprises, Inc., 85 F.Supp. 410 (D.N.Mex.1949). See, also, Benton v. Vinson, Elkins, Weems & Searls, 255 F.2d 299 (2 Cir. 1958), cert. den. 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958).

On the other, some transferor courts, by requiring, as a precautionary condition of transfer, that the statute of limitations of the transferor district be applied when the case is transferred, have implied that a transferee federal court may apply the body of law applicable in the jurisdiction in which it sits. See Hokanson v. Helene Curtis Industries, Inc., 177 F.Supp. 701 (S.D.N.Y.1959); May v. The Steel Navigator, 152 F.Supp. 254 (E.D.N.Y.1957); Crawford v. The S.S. Shirley Lykes, 148 F.Supp. 958 (S.D.N.Y.1957); Curry v. States Marine Corp. of Delaware, 118 F.Supp. 234 (S.D. N.Y.1954); Frechoux v. Lykes Bros. S.S. Co., Inc., 118 F.Supp. 234 (S.D.N.Y. 1953).

Other cases have held that the law of the forum in which the transferee court is sitting should be applied in situations where that result was not necessarily dependent on the place where the case was to be heard and determined. See Heaton v. Southern Ry Co., 119 F.Supp.

---

4. § 1404(a) "Change of venue

"(a) For the convenience of parties and witnesses, in the interest of justice, a dis-trict court may transfer any civil action to any other district or division where it might have been brought."

658 (W.D.S.C.1954); Leppard v. Jordan's Truck Line, 116 F.Supp. 130 (W.D.N.C. 1953).

Plainly a choice must be made between the desirability of achieving a uniform result in the transferor and transferee courts on the one hand, or in the transferee court and the courts of the state in which it sits on the other.

As I see it, the better view is to require the application of the whole body of law of the state in which the transferor court sits throughout the litigation. Apart from the cases which imposed conditions on transfer, which should not be construed as holding that the law of the jurisdiction in which the transferee court sits governs, the weightier and better reasoned case law indicates that this view is the correct one. See cases cited, supra, p. 276.

Transfer under § 1404(a) is a discretionary remedy, the denial of which is not reviewable except by mandamus. If the district court in which the action was instituted entertains a motion to transfer under § 1404(a) for convenience of parties and witnesses, in the interests of justice it may be presumed that it had in personam and subject matter jurisdiction and that venue was properly laid.[5] If the motion to transfer is denied and the case remains in the district in which it was instituted the whole law of the forum, including the conflicts law, would govern. A motion to transfer under § 1404(a) may be granted only for "the convenience of parties and witnesses, in the interests of justice." There is no logical reason why transfer on these grounds should operate to change the law applicable to a case properly brought in the district in which it was commenced. To hold that it does would make for a result which may not be read or inferred

from the language of § 1404(a) and is not consistent with the purpose and intent of that statute. Such a holding would have consequences which were never intended to flow from the application of the section and would confer gratuitous benefits or detriments on parties without any logical basis.

I therefore follow the view of the Tenth Circuit as stated in Headrick v. Atchison, Topeka & Sante Fe Ry. Co., supra, and proceed on the theory that the whole body of California law, the law of the jurisdiction in which the action was instituted governs this action.[6]

Under California law literary property is treated as intangible and incorporeal in nature, existing separate and apart from the physical form in which it is embodied. Italiani v. Metro-Goldwyn-Mayer Corporation, 45 Cal.App. 2d 464, 114 P.2d 370 (Cal.Dist.C.A., 3d Dist. 1941); Pickford Corporation v. De-Luxe Laboratories, supra. As such, it cannot be the subject of an action for "conversion" in the strict sense of the term. Italiani v. Metro-Goldwyn-Mayer Corporation, supra. Therefore, when a pleading alleges, in substance, as RKO's does here, that a party "did deliberately and unlawfully appropriate and convert" a literary composition, the action sounds in tort for the taking or depriving another of an intangible incorporeal right. Italiani v. Metro-Goldwyn-Mayer Corporation, supra. Such a claim, not coming expressly under some other category of limitation falls within § 339, subd. 1, of the California Code of Civil Procedure which provides a two year statute of limitations. Italiana v. Metro-Goldwyn-Mayer Corporation, supra; Pickford Corporation v. De-Luxe Laboratories, supra.

Has that statutory period run in the case at bar?

---

5. But cf. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) dealing with transfer for improper venue under 28 U.S.C. § 1406(a).

6. If, on the other hand, New York law were properly to be applied at the outset and the New York statute of limitations

were to govern, on the papers now before me it appears that the New York Statute may have been tolled under § 19 of the New York Civil Practice Act and the California statute of limitations might therefore well be controlling anyway. See § 13, New York Civil Practice Act.

 Under California law, for statute of limitations purposes the date at which the counterclaim is filed is of no significance. It is the date of the commencement of the action which is determinative. Jones v. Mortimer, 28 Cal.2d 627, 170 P.2d 893 (1946); Union Sugar Co. v. Hollister Estate Co., 3 Cal.2d 740, 47 P.2d 273 (1935).

Defendant's claim here apparently arose by October 26, 1956, the date at which "The Brave One" was first exhibited. See Pickford Corporation v. De-Luxe Laboratories, Inc., supra. Plaintiff filed its complaint in this action on November 5, 1958. Thus it would appear that the statute had in fact run by approximately one week.

However, § 440 of the California Code of Civil Procedure, provides that "When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated, so far as they equal each other * * *."

That section has been construed to bar the running of the statute of limitations on a cross-demand, set up by way of counterclaim, when the cross-demands "have existed under circumstances where if either brought an action thereon the other could have set up a counterclaim." Jones v. Mortimer, supra, 170 P.2d at p. 897. See, also, O'Keefe v. Aptos Land & Water Co., 154 Cal.App.2d 772, 286 P.2d 417, 54 A.L.R.2d 462 (1955); Sunrise Produce Co., Inc. of San Franciso v. Malovich, 101 Cal.App.2d 520, 225 P.2d 973 (1951). That is precisely the situation here. The contention of King Bros. that the counterclaim is barred by the statute of limitations is not well grounded.

(3)

 Turning finally to the third contention, King Bros. urges that the challenge made in the counterclaim to its title to the script of "The Brave One" is inconsistent with RKO's prior course of conduct with respect to the script, and RKO should therefore be estopped from setting up the counterclaim.

While this contention may ultimately prove to have merit, that question should not be finally determined at this juncture in a case of this nature. Many of the facts as to the dealings between the parties are still obscure. RKO denies many of plaintiff's assertions of fact and to make out a case plainly must rely heavily upon what evidence it can elicit from plaintiff. Credibility of various of the witnesses may be of significance. Under these circumstances I do not consider summary judgment on the question of alleged estoppel to be appropriate at this time. Arnstein v. Porter, 154 F.2d 464 (2 Cir. 1946); Bozant v. Bank of New York, 156 F.2d 787 (2 Cir. 1946). See, also, 6 Moore's Federal Practice, supra, pp. 2101, et seq.

The motions made by King Bros. are accordingly in all respects denied.

It is so ordered.